OPINION
{¶ 1} Appellant, Corey M. McKinnon, appeals from the May 29, 2002 Judgment Entry overruling his motion for a new trial and sentencing him to nine years in prison following his conviction for rape rendered in the Columbiana County Court of Common Pleas. This was Appellant's second conviction in this matter. The original conviction was reversed and remanded by this Court on January 29, 2001.
 {¶ 2} Appellant raises ten assignments of error on appeal. Based on our analysis herein, all of Appellant's assignments of error lack merit. Thus, his conviction and sentence is affirmed in its entirety.
 {¶ 3} The rape occurred on July 9, 1997. The victim, Angel Orr ("Orr"), resided in the same apartment complex as Appellant. Her daughter attended the same preschool as Appellant's son. Thus, when Appellant requested to use Orr's telephone on the night in question, she allowed him into her apartment. The rape occurred in Orr's apartment at approximately 9:30 p.m. after Appellant used her telephone. Orr's two young children were asleep in the next room at the time of the incident. (Trial Tr., Vol. 2, pp. 317-318.)
 {¶ 4} The record reveals that after entering Orr's residence, Appellant repeatedly told her that she was beautiful and that she was a pretty woman. Orr told Appellant to leave, but he did not comply. He restrained Orr and vaginally raped her. Orr did not scream or call for help because her daughters were in the next room. (Trial Tr., Vol. 2, pp. 318-323.)
 {¶ 5} After the incident, Orr initially telephoned a girlfriend. She then contacted her apartment complex security guard and her mother. Orr's mother called the East Liverpool Police Department. Patrolman Flati took Orr that evening to the East Liverpool City Hospital for treatment and a "rape kit" examination.
 {¶ 6} Thereafter, Appellant was charged by secret indictment on January 15, 1998, with one charge of rape in violation of R.C. § 2907.02(A)(2), a felony of the first degree. At the first pretrial on February 12, 1998, the trial court ordered the State of Ohio to copy any transcripts of testimony or statements of witnesses for use at trial pursuant to Crim.R. 16.
 {¶ 7} The original jury trial began on December 14, 1998. Orr repeatedly testified at the first trial that Appellant "tore off" her clothes. The defense presented no evidence at the first trial, but it did cross-examine the state's witnesses. The jury returned a guilty verdict on December 15, 1998.
 {¶ 8} Prior to Appellant's first sentencing hearing, his trial counsel reviewed a pre-sentence investigation report by the adult probation office. Attached to the report was the incident report of the security guard who was working the night of the incident. The security guard, Lonnie Cooper ("Cooper"), stated: "she had been raped. Then she told me, he made me take off all my clothes and do it on the floor."
 {¶ 9} Thereafter, Appellant filed a motion for a new trial pursuant to Crim.R. 33, alleging prosecutorial misconduct for the nondisclosure of Orr's inconsistent statement as contained in the Cooper incident report. The trial court overruled the motion.
 {¶ 10} On appeal, this Court reversed and remanded the case pursuant to Crim.R. 33(A) and Crim.R. 16(B). State v. McKinnon
(Jan. 29, 2001), 7th Dist. No. 99-CO-11. Following our remand, a second jury trial was held on April 2, 2002. The jury found Appellant guilty.
 {¶ 11} Appellant was subsequently sentenced to nine years in prison and was classified as a sexual predator in accordance with R.C. Chapter 2950.
 {¶ 12} Appellant's notice of appeal from the May 29, 2002 Judgment Entry was filed on June 28, 2002.
 {¶ 13} Because Appellant's assignments of error one, three, four, six, seven, eight and ten regard matters that arose during Appellant's jury trial, they will be addressed first.
 {¶ 14} Appellant's first assignment of error asserts:
 {¶ 15} "The defendant-appellant was denied his right under both the ohio and united states constitutions to exculpatory evidence due to the prosecution's failure to timely reveal a prior inconsistent statement of the alleged victim."
 {¶ 16} As set forth above, Appellant's first conviction was reversed by this Court as a result of the prosecution's nondisclosure of a prior inconsistent statement made by the victim. The current error as assigned by Appellant is based on the same facts and law that resulted in the earlier reversal.
 {¶ 17} This assignment of error asserts that Appellant was denied the right to due process as a result of the state's original nondisclosure of the security guard's report. Appellant claims that as a result of the initial nondisclosure, he was denied the opportunity to locate Cooper, the security guard. Appellant claims that despite repeated efforts, he was unable to locate Cooper for his second trial. In support of the asserted error, Appellant stresses that he was not aware of Cooper's significance until the original sentencing hearing, January 8, 1999, which was eighteen months after the rape. Appellant does not, however, point to evidence of any specific efforts that he or his counsel made to locate Cooper.
 {¶ 18} Appellant's claimed inability to secure Cooper is referenced in the trial court's record during the initial proceedings. Appellant requested assistance in hiring a private investigator to locate specific individuals, including Cooper, in order to develop his testimony prior to his first trial in this matter. (October 13, 1999, Petition for Post-Conviction Relief/Evidentiary Hearing/Motion for Investigator.) This combined motion was denied by the Columbiana County Court of Common Pleas. (November 4, 1999, Judgment Entry.) The request for an investigator was not specifically addressed in that entry. Appellant appealed from the November 4, 1999, Judgment Entry, but we dismissed the petition for post-conviction relief as moot, since this Court had reversed the trial court's decision and vacated the conviction. State v. McKinnon (March 15, 2001), 7th Dist. No. 99-CO-75. On remand, it does not appear that Appellant ever again requested investigative assistance.
 {¶ 19} However, Appellant's counsel indicated at a January 7, 2001, hearing that he had been looking for Cooper and that he would, "be asking for the State's assistance in tracking him down[,]" but no such efforts were described. (January 7, 2001, Pre-Trial, pp. 5-6.) Thereafter, there is no indication that Appellant formally requested investigative assistance from the state.
 {¶ 20} Appellant argues that he was denied the right to have Cooper testify in order to challenge Orr's testimony. Appellant claims that he would have been able to locate Cooper had the prosecution timely revealed the incident report. This assertion is unsubstantiated.
 {¶ 21} In vacating Appellant's original conviction based on the state's nondisclosure of Cooper's incident report, this Court stressed the importance of this report relative to Orr's credibility:
 {¶ 22} "Appellee's case depended almost entirely on Orr's testimony. * * * Her personal credibility was potentially dispositive. The importance of her credibility was further highlighted by an entire lack of physical evidence connecting appellant to the alleged crime. * * * Appellee presented its case with a theme stressing Orr's veracity. During trial and especially during closing argument, the prosecutor repeatedly argued to the jury how Orr had been entirely consistent when she recounted her version of the events to different persons.
 {¶ 23} "* * * When the prosecution fails, in response to a request, to disclose impeachment evidence relating to the credibility of its key witness, the truth-finding process of trial is corrupted to some degree in all instances. But when `the "reliability of a given witness may well be determinative of guilt or innocence,"' and when the prosecution's case depends almost entirely on the testimony of a certain witness, * * * evidence tending to negate that witness' credibility simply may not be said to be immaterial. [Citations omitted.]
 {¶ 24} "* * *
 {¶ 25} "In this case, had appellee disclosed the suppressed evidence, appellant would have been better able to challenge Orr's credibility. She testified that appellant had `tore off' her clothes. Clearly, Orr's statement to the security guard on the night of the incident is inconsistent with her testimony at trial and, thus, damages her credibility. The damage caused by the nondisclosure is further exacerbated by the fact that appellee presented no evidence of torn clothing." State v.McKinnon (Jan. 29, 2001), 7th Dist. No. 99-CO-11, at 3-4.
 {¶ 26} It should be noted that unlike the first trial, Appellant's counsel did present a defense at the second trial. Further, the prosecution did not stress Orr's consistency during the second trial. Appellant's trial counsel was also able to cross-examine Orr about Cooper's incident report at the second trial, despite Cooper's physical absence:
 {¶ 27} "Q All right. Do you remember giving a statement to Lonnie Cooper, the security guard at the apartment complex; do you recall that?
 {¶ 28} "A Yes, yes.
 {¶ 29} "* * *
 {¶ 30} "Q Okay. And do you recall ever seeing the hard copy or the written statement that Mr. Cooper wrote out from your conversation with him on that evening?
 {¶ 31} "A Yes
 {¶ 32} "Q You've seen that?
 {¶ 33} "A Yes.
 {¶ 34} "* * *
 {¶ 35} "Q And about half way down in the statement, it indicates a quotation mark, if you can read it for the ladies and gentlemen of the jury, starting with `he made'?
 {¶ 36} "* * *
 {¶ 37} "A `He made me take off all my clothes and do it on the floor.'
 {¶ 38} "* * *
 {¶ 39} "A That's what it says, but that's not what I said." (Trial Tr., Vol. 2, pp. 330-331.)
 {¶ 40} The trial court thereafter disallowed the admission of the Cooper incident report as an exhibit. (Trial Tr., Vol. 2, pp. 354-355.)
 {¶ 41} Appellant's inability to locate Cooper is an unsubstantiated assertion. During the second trial and the time immediately preceding, Appellant did not renew earlier requests for help in locating this witness. Likewise, nowhere in the record does it appear that any attempts were actually made. There is no evidence indicating whether Appellant would have been able to locate Cooper in 1998 when the initial discovery was requested. Further, there is no way to establish that Cooper's testimony would have remained consistent with his report or if he would have explained away the seeming inconsistency in his report with Orr's testimony.
 {¶ 42} In an effort to stress this apparent inconsistency, Appellant's trial counsel cross-examined Orr relative to another statement in which she indicated that Appellant "tore off" her clothes:
 {¶ 43} "Q And there the statement says that you told Dr. Henzes that Mr. McKinnon tore off your clothes, isn't that correct?
 {¶ 44} "A That's because it felt like he tore off my clothes." (Trial Tr., Vol. 2, p. 333.)
 {¶ 45} Unlike the first trial, Appellant was able to bring into question Orr's credibility by use of her prior inconsistent statements. Also unlike the first trial, on remand the prosecution did not stress Orr's consistency.
 {¶ 46} While it would have been ideal for Cooper to testify at Appellant's second trial, there is no evidence establishing that his failure to testify was a result of the prosecution's initial failure to disclose the incident report. There is likewise no evidence establishing that had Cooper testified, the outcome of the trial would have been different. Orr's inconsistent statement was raised before the jury.
 {¶ 47} As such, Appellant's first assignment of error lacks merit and is overruled.
 {¶ 48} Appellant's third assignment of error asserts:
 {¶ 49} "The trial court erred in denying the admission of defense exhibit b containing an inconsistent statement of alleged victim."
 {¶ 50} Appellant next asserts that the trial court erred in excluding the Cooper incident report containing Orr's prior inconsistent statement. Appellant argues that his inability to have Cooper testify at the trial would have been minimized by admitting the report.
 {¶ 51} A trial court has broad discretion in the admission and exclusion of evidence, and will not be reversed absent a clear abuse of discretion that materially prejudices the defendant. State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126.
 {¶ 52} In his argument, Appellant relies on the United States Supreme Court's decision in Chambers v. Mississippi (1973),410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297. Chambers held that state evidence rules that preclude an accused from introducing critical evidence violate due process. Id. In Chambers, supra, the defendant was denied the right to cross-examine an individual as a result of the Mississippi rules that prohibited a party from cross-examining their own witness and by the hearsay rules.
 {¶ 53} In the instant case, Appellant fully cross-examined Orr relative to her inconsistent statement. (Trial Tr., Vol. 2, pp. 330-331.) A portion of the statement was read in court. Appellant, however, was not allowed to introduce the report containing the statement as an exhibit. (Trial Tr., Vol. 2, pp. 354-355.) Pursuant to Evid.R. 613(B), Orr's inconsistent statement should have been admitted as an exhibit. As such,Chambers is not applicable since the rules provided for the admission of the report in the instant case. The error is in the trial court's application of the rule and not within the rule itself.
 {¶ 54} It should be noted that both Appellant and the state fail to reference Evid.R. 613(B), which provides:
 {¶ 55} "(B) Extrinsic evidence of prior inconsistent statement of witness
 {¶ 56} "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 {¶ 57} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 {¶ 58} "(2) The subject matter of the statement is one of the following:
 {¶ 59} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 {¶ 60} "(b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(B) or 706;"
 {¶ 61} The prosecution asserts that the trial court appropriately excluded the inconsistent statement due to the lack of foundation for the statement. However, the Ohio Supreme Court has held:
 {¶ 62} "`When extrinsic evidence of a prior inconsistent statement * * * is offered into evidence pursuant to Evid.R. 613(B), a foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement.'" State v. Mack (1995), 73 Ohio St.3d 502, 514-515,653 N.E.2d 329, citing State v. Theuring (1988),46 Ohio App.3d 152, 155, 546 N.E.2d 436.
 {¶ 63} In the instant case, Orr admitted talking to the complex security guard and admitted she had previously seen the report, but denied making the statement contained within the report. (Trial Tr., Vol. 2, pp. 330-331.)
 {¶ 64} Thus, Orr was appropriately presented with the statement, which she denied. The prosecution was afforded the requisite opportunity to question Orr regarding her statement on redirect examination. Further, since the report concerned the facts and circumstances of the rape as allegedly stated by Orr, it certainly concerned, "a fact that is of consequence," consistent with Evid.R. 613(B)(2)(a). Whether Appellant actually tore Orr's clothes off may be relevant to the element of "force or threat of force" in R.C. § 2907(A)(2).
 {¶ 65} Based on the foregoing, the statement Orr gave to Cooper should have been admitted into evidence since the requisite foundation set forth in Evid.R. 613(B) was established. However, our review does not end here. We must still determine whether the trial court's failure to admit Exhibit B materially prejudiced Appellant, necessitating a reversal of his conviction.
 {¶ 66} "Prejudicial error is an error that affects the outcome of a case. Where a particular record contains other overwhelming evidence of a defendant's guilt, we have previously held that an error in the admission of evidence is not prejudicial." (Citations omitted.) State v. Zamorski (2000),141 Ohio App.3d 521, 526, 752 N.E.2d 288.
 {¶ 67} In State v. Talbert (1986), 33 Ohio App.3d 282,515 N.E.2d 968, the Third District Court of Appeals reversed and remanded Talbert's conviction for sexual imposition. Talbert
held that the trial court improperly denied the defendant the opportunity to present evidence of the victim's prior inconsistent statement. Id. Defense counsel asked the victim if she ever made the statements that she had, "Talbert's ass nailed," or that, "[h]e [Talbert] will never put his hands on another woman." Id. at 284. The victim denied the statements in the presence of the jury. Id. Thereafter, defense counsel was denied his request for a tape recorder in order to play the victim's statements in a recorded telephone conversation before the jury. Id.
 {¶ 68} The next day, the court reconsidered its decision to allow defense counsel to play the recorded victim's statements. Id. The trial court decided that it would allow counsel to play the tape, but only outside the presence of the jury. Id. The audiotape was played, and the victim then admitted making the statements. Id. The jury never heard the tape, but defense counsel was subsequently allowed to cross-examine the victim on those limited issues. Relying on the Confrontation Clause of theSixth Amendment to the United States Constitution, the court of appeals reversed and remanded Talbert's conviction. It stressed the importance of the right to, "challenge the credibility of the chief complaining witness against him[:]"
 {¶ 69} "[I]f her [the victim's] testimony and credibility is to be attacked through the device of prior inconsistent statements under Evid. R. 613(B), the reaction of that witness when confronted with the contrary statements must be seen by the jury. * * *" Id. at 285.
 {¶ 70} Thus, in Talbert, the error was not necessarily in the jury's failure to hear the tape itself, but in the failure to see the witness when she was actually being impeached.
 {¶ 71} In the instant case, Orr's reaction to the inconsistent statement in the Cooper report was before the jury. In fact, Orr admitted she had seen the statement before, and she read the inconsistent portion aloud in the jury's presence. Thereafter, the court did not allow it to be admitted as an exhibit, but the jury was able to view her reaction to the report and fully hear the pertinent contents.
 {¶ 72} We must note that since Appellant's prior conviction was a direct result of the prosecution's failure to disclose this report, one can presume that Orr was prepared for this cross-examination. Thus, her reaction to the statement before the jury was probably not as pivotal as in Talbert, supra, in which the victim was apparently unaware that her prior inconsistent statement was recorded and that she was about to be impeached. Admission to the exhibit or the failure to admit it does not affect Orr's lack of surprise.
 {¶ 73} Since there was no other eyewitness to the rape, Appellant's conviction clearly stemmed from the jury's reliance on Orr's testimony. While there was some other evidence of trauma indicative to rape, especially from the emergency room physician, the jury chose to believe Orr's version of the occurrence over Appellant's assertions of consensual sexual activity.
 {¶ 74} In determining her credibility, the jury heard Orr testify as to the apparent inconsistent contents contained in Cooper's report. She did not dispute the report's contents or existence. In fact, Orr admitted that she spoke to the apartment complex security guard and that she had previously seen the report. Thereafter, she simply testified that she did not make the statement contained therein that, "he made me take off all my clothes."
 {¶ 75} The record here reflects that the trial court's failure to admit Appellant's Exhibit B, while in error, did not affect Appellant's conviction since the jury heard Orr's testimony confirming the existence of her inconsistent statement, and the jury witnessed Orr's reaction when she was presented with her prior statement. The jury was read the contents of her statement, even though they did not receive the actual paper it was written on. Appellant's third assignment of error is overruled since the court's error cannot be said to have affected the outcome of Appellant's trial.
 {¶ 76} Appellant's fourth assignment of error asserts:
 {¶ 77} "The trial court erred in admitting state's exhibit 11 over the objection of defense counsel."
 {¶ 78} Appellant asserts that State's Exhibit 11 was incorrectly admitted, causing prejudice. State's Exhibit 11 consists of two pages of typed field notes prepared by Detective Donald Fickes ("Fickes"). (Trial Tr., Vol. 2, pp. 480-482.) Appellant asserts that Exhibit 11 contained inadmissible hearsay statements made by Appellant's wife and mother.
 {¶ 79} Appellant also asserts that the field notes should not have been admitted because they were incomplete. According to Fickes' testimony, the first page of the field notes was not attached to Exhibit 11. The contents of that absent first page are not in the record.
 {¶ 80} Fickes testified at trial that Exhibit 11 was a copy of his field notes; that the first page appeared to be missing; that he personally typed the notes; and that the notes accurately depicted his activities on July 10, 1997, the day after the alleged rape by Appellant. Thereafter, the prosecution moved for the admission of Exhibit 11.
 {¶ 81} Appellant's trial counsel objected to the admission of this exhibit without stating his grounds for the objection on the record. The trial judge conducted an off-the-record discussion and subsequently admitted Exhibit 11 without disclosing the substance of the objection or the reason for his ruling on the record.
 {¶ 82} Appellant fails to identify the particular portions of the exhibit that he claims constitute inadmissible hearsay. Exhibit 11 provides in its entirety:
 {¶ 83} "COREY WAS WILLING TO COME TO THE STATION HE AGAIN ASKED IN REF. TO WHAT I SAID I WOULD EXPLAIN OUTSIDE SO THAT HIS WIFE WOULD NOT OVER HEAR. [SIC] DET MORGAN SPOKE TO THE WIFE. I ADVISED COREY AT THE DOOR TO THE COMPLEX THAT A GIRL MADE AN ACCUSATION THAT HE SEXUALLY ASSAULTED HER. HE SAID I WASN'T HOME LAST NIGHT I SAID I DIDN'T EVEN SAY LAST NIGHT. HE SAID I KNOW WHO IT IS. I ASKED HIM TO RIDE TO THE STATION IN THE CRUISER WITH US HE SAID IM NOT CHARGED SO I DON'T WANT TO RIDE IN THE POLICE CAR I THEN TOLD HIM TO GO GET HIS KEYS AND HE COULD DRIVE HIMSELF. HE DID NOT COME BACK OUT AND AFTER A FEW MINS. WE WENT BACK TO HIS APT. HE SAID THAT HE WAS CONTACTING HIS ATTY. PAYNE. HIS MOTHER WAS ON THE PHONE AND SAID SHE DID NOT WANT HIM TALKING TO THE POLICE AND THAT HE WOULD HAVE AN ATTORNEY CONTACT US FOR A MEETING IN THE MOURNING [SIC] BECAUSE HER SON HAD TO GO TO WORK IN A FEW HOURS. SHE SAID WHY ARE YOU MAKING HIM GO TO THE STATION SHE WAS ADVISED THAT WE WERE NOT MAKING HIM THAT HE WAS VOLUNTARILY COMING TO THE STATION. SHE AGAIN ADVISED THAT HE WILL NOT COME DOWN. HE WAS THEN ADVISED OF HIS MIRANDA WARNING BY DET. MORGAN. HE SAID THE ONLY THING I'M GUILTY OF IS USING THE PHONE AND THAT HE WAS HOME ALL NIGHT AND THAT WE COULD CHECK WITH PIZZA DOMAIN AND HIS WIFE AND HIS WIFE STATED SHE CALLED HIM SEVERAL TIMES DURING THE NIGHT. I ADVISED HIM THAT THE PROBLEM WAS NOT GOING AWAY AND THAT A BLOOD TEST WOULD ANSWER AND ACCUSATIONS.
 {¶ 84} "U-66 and 44 then went to pizza domain and got a copy of the delivery schedule for last night the delivery was called in at 5:44 pm the rape occurred around 10:00 pm.
 {¶ 85} "Evidence was collected at the victim's residence. 1-towel that the suspect used to wipe himself off." (State's Exhibit 11.)
 {¶ 86} Evid.R. 103 states:
 {¶ 87} "(A) Effect of erroneous ruling
 {¶ 88} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 {¶ 89} "(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context; * * *"
 {¶ 90} Evid.R. 801(C) provides: "`[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible. Evid.R. 802.
 {¶ 91} Evid.R. 803 provides hearsay exceptions where the availability of the declarant is immaterial. The exception within Evid.R. 803(8), public records and reports, applies herein:
 {¶ 92} "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases mattersobserved by police officers and other law enforcement personnel,
unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness." (Emphasis added.)
 {¶ 93} In analyzing the exception within the Evid.R. 803(8) exception, the Ohio Supreme Court has held:
 {¶ 94} "We interpret the exclusionary language of Evid. R. 803(8) as consistent with the law prior to its adoption. The phrase, `excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel * * *,' prohibits the introduction of reports which recite an officer's observations of criminal activities or observations made as part of an investigation of criminal activities." State v. Ward
(1984), 15 Ohio St.3d 355, 358, 474 N.E.2d 300.
 {¶ 95} In the instant cause, Fickes' field notes were apparently introduced to support the state's case and to assert that Fickes' statements contained in the notes were truthful. Fickes testified as to most of the assertions and statements contained in his field notes as a witness for the state, and State's Exhibit 11 almost entirely reiterated Fickes' testimony.
 {¶ 96} Fickes did not testify identically at the trial about some of the out-of-court statements allegedly made by Appellant's mother and wife. Fickes did not directly testify Appellant's mother allegedly stated that: "HE WOULD HAVE AN ATTORNEY CONTACT US FOR A MEETING IN THE MOURNING [sic] BECAUSE HER SON HAD TO GO TO WORK IN A FEW HOURS." However, in his testimony Fickes did state that he spoke with Appellant's mother on the phone, that she said she was contacting an attorney and that she did not want Appellant to go to the station with the officers. Appellant's trial counsel did not object when Fickes offered this strikingly similar testimony. (Trial Tr., Vol. 2, p. 287.)
 {¶ 97} Fickes' testimony also did not include the alleged statement by Appellant's wife that she called several times during the night. While Appellant's wife testified at the trial, she was never asked whether she made this statement to Fickes.
 {¶ 98} Both of these alleged statements are out-of-court statements likely offered by the state for the truth of the matter asserted. Further, it is apparent that the admission of Exhibit 11 was contrary to Evid.R. 802 and 803(8) since Fickes' field notes were based on matters that he observed during his detective duties. Thus, Exhibit 11 should have been excluded as inadmissible hearsay.
 {¶ 99} However, we must again determine whether this error was prejudicial, i.e., whether the admission of State's Exhibit 11 affected the outcome of the case. As in any rape case, the verdict undoubtedly turned on Orr's testimony and credibility. However, Orr was not the only state witness. As earlier discussed, the state also had the emergency room physician testify about Orr's traumatic condition that night.
 {¶ 100} In addition, it is clear from the record that Appellant was undoubtedly not a compelling witness on his own behalf. In fact, he testified that his sexual relations with the victim, "[were] practically consensual." (Trial Tr., Vol. 2, p. 446.) Further, the state's witness, Laura Thompson, testified that she overheard Appellant and his wife yelling the night of the rape. She stated that she heard a conversation between Appellant and his wife, Robyn:
 {¶ 101} "He said that he was jogging and then he said he was at a friend's and then he said she had to say he was at home. He also said that she had to go up there and tell that girl he didn't do anything and that she — Robyn, being Robyn, was the only person that could save him from this."
 {¶ 102} "Q From what?
 {¶ 103} "A The allegations, I would suppose.
 {¶ 104} "* * *
 {¶ 105} "Q And you're sure you heard Corey McKinnon state that?
 {¶ 106} "A I'm absolutely sure." (Trial Tr., Vol. 2, pp. 300-301.)
 {¶ 107} Based on the foregoing, it appears the trial court's admission of Exhibit 11, while in error, did not affect the outcome of his case since the contents of the notes, almost verbatim, were already in evidence via Fickes' testimony. At no time did Appellant object to this testimony. The court's admission of Exhibit 11 cannot be said to have prejudiced Appellant. Thus, Appellant's fourth assignment of error is overruled.
 {¶ 108} Appellant's sixth assigned error alleges:
 {¶ 109} "The defendant-appellant was denied his right to a full cross-examination of witness laura thompson."
 {¶ 110} Appellant asserts that he was denied the opportunity to effectively cross-examine the state's witness, Laura Thompson ("Thompson"). As earlier discussed, Thompson testified that she was Appellant's neighbor at the time of the incident. She testified that she could hear Appellant through the apartment walls asking his wife to help him with an alibi and stating that she was the only one that could save him.
 {¶ 111} This assignment of error is based on certain disclosures allegedly made at the sentencing hearing that Appellant asserts conflict with the prosecutor's closing arguments. Specifically, Appellant points to these statements by the prosecutor in his closing argument:
 {¶ 112} "* * * she's [Thompson] the young lady who drove in from the State of Maryland at my request to testify as a witness on behalf of the State of Ohio in this matter.
 {¶ 113} "That she indicated that she really doesn't know anybody involved in this case, be it the Defendant or Angel [the victim]. But she came in here to tell you what she heard through those paper thin walls of the Heights Manor Apartment Complex." (Trial Tr., Vol. 2, pp. 491-492.)
 {¶ 114} Additional facts allegedly not known by defense counsel regarding Thompson were revealed at Appellant's sentencing hearing. Bettina Beight ("Beight"), a Columbiana County investigator, testified at sentencing that Thompson was one of the individuals who made prior sexual harassment allegations against Appellant. Beight testified that Thompson told her Appellant came to Thompson's apartment in 1997 when she was six months pregnant. Thompson allegedly said that Appellant told her that she was pretty, and he tried to get her to dance with him and to hug him. (May 23, 2002, Tr. Motion for New Trial; Sentencing; and Sexual Predator Hearing, pp. 38-39, 46.) While Appellant does not directly state that he had no prior knowledge of these allegations by Thompson, he implies that this is the case.
 {¶ 115} Appellant also points to his trial counsel's statements at the motion hearing one day before the commencement of the trial that were not addressed by the prosecution. Appellant's trial counsel, stated: "[i]t is my belief that the State of Ohio probably at this time won't be calling Laura Thompson as a witness." (April 1, 2002 Tr., p. 85.) Thereafter, the prosecutor did not correct defense counsel's misstatement or misunderstanding. However, in response to this comment, the prosecutor indicated that he would share Thompson's statement. (April 1, 2002 Tr., p. 86.) She was subsequently called without objection as a witness at trial.
 {¶ 116} Appellant asserts that the state's closing argument cannot be reconciled with its knowledge that Thompson knew Appellant and that she had motivation to lie. Appellant argues that this nondisclosure (the evidence of which would lie entirely outside of the record) and the prosecution's failure to correct defense counsel's misunderstanding are contrary to the "Brady
rule." Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215.
 {¶ 117} In State v. Johnston (1988), 39 Ohio St.3d 48,529 N.E.2d 898, paragraph five of the syllabus, the Supreme Court of Ohio held:
 {¶ 118} "In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome."
 {¶ 119} In response to this argument, the state adamantly denies that it failed to share Thompson's allegations and statement with Appellant's trial counsel. It asserts that the statement and information concerning Thompson were disclosed to Appellant's trial counsel, but that said information was not included as part of the record. The state argues that Appellant's trial counsel simply chose not to use the information due to its "prior bad act" content.
 {¶ 120} Further, the prosecution asserts that the jury was aware that Thompson knew Appellant based on her testimony that she knew Appellant in July of 1997 and that she lived in the same apartment complex as Appellant. (Trial Tr., Vol. 2, p. 299.)
 {¶ 121} Based on the record, it is unclear whether or not Appellant's trial counsel had the information as to Thompson's prior contact with Appellant. Had the prosecution been hiding Thompson's alleged history with Appellant, it seems logical that the prosecutor would not have raised these "hidden" facts at the sentencing hearing. Had Appellant's trial counsel been surprised by Beight's testimony regarding Thompson's allegations, Appellant's trial counsel had a duty to address this on the record at the sentencing and in cross-examining Beight. The record clearly shows that after Beight testified about Thompson's earlier allegations and the court addressed Appellant's trial counsel, counsel stated that he had no further questions. Beight was then dismissed as a witness. At no time did Appellant or his counsel raise an objection or concern with Thompson or her testimony.
 {¶ 122} Based on the similarity between Thompson's and Orr's allegations, it is questionable that, had counsel known Thompson's allegations he would likely have addressed them at trial. Even if this information was not provided to defense counsel, which is not established, it would not have affected the outcome of Appellant's trial. If presented to the jury, this information likely would have been more harmful than beneficial. Assuming for the sake of argument that this information was not disclosed, Appellant was not prejudiced by the alleged failure. Finally, the allegations Appellant relies on involve matters which lie entirely outside of the record. Appellant's sixth assignment of error lacks merit and is overruled.
 {¶ 123} Appellant's seventh assignment of error asserts:
 {¶ 124} "The trial court erred in overruling defendant-appellant's motion for a directed verdict of acquittal."
 {¶ 125} Crim.R. 29(A) motion for judgment of acquittal provides in part:
 {¶ 126} "The court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"
 {¶ 127} "[However,] a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, 9 O.O.3d 401,381 N.E.2d 184, syllabus.
 {¶ 128} Pursuant to R.C. § 2907.02(A)(2), the definition of rape provides:
 {¶ 129} "(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 130} R.C. § 2907.01(A) defines "sexual conduct" as:
 {¶ 131} "* * * vaginal intercourse between a male and female; * * * and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 132} Appellant asserts that the state's evidence was insufficient due to the lack of semen found in Orr's vagina. Appellant apparently forgets that penetration is sufficient to sustain his conviction, and Orr testified as to penetration. Further, Dr. Henzes testified that it is not uncommon to find a lack of semen in a victim's vagina if the male did not ejaculate in the vagina. (Trial Tr., Vol. 2, pp. 374-375.) Dr. Henzes also testified that since Orr was menstruating at the time of the offense, the menstrual flow could help, "wash out any physical evidence." (Trial Tr., Vol. 2, p. 374.)
 {¶ 133} Based on the victim's and Dr. Henzes' testimony, it is apparent that a rational trier of fact could have found that the essential elements of rape were proven beyond a reasonable doubt. The offense of rape does not require evidence of semen inside the victim. As such, Appellant's seventh assignment of error lacks merit and is overruled.
 {¶ 134} Appellant's eighth assignment of error asserts:
 {¶ 135} "The defendant-appellant was denied the effective assistance of counsel."
 {¶ 136} The U.S. Supreme Court outlined its two-part test for evaluating whether assistance of counsel was so ineffective to require a reversal in Strickland v. Washington:
 {¶ 137} "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 138} "* * *
 {¶ 139} "[In addition,] * * * the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" (Citation omitted.)Strickland v. Washington (1984), 466 U.S. 668, 687-689,104 S.Ct. 2052, 80 L.Ed.2d 674; see also State v. Thompson (1987),33 Ohio St.3d 1, 10, 514 N.E.2d 407.
 {¶ 140} The standard for determining deficient performance is whether counsel's actions fell below an objective standard of reasonableness. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus. To demonstrate the requisite prejudice, a defendant must establish that a reasonable probability exists that, but for his counsel's errors, the result of the trial would have been different. Id. at paragraph three of the syllabus.
 {¶ 141} Appellant identifies three separate claims of ineffective assistance of counsel under this assignment of error.
 {¶ 142} Appellant's first claim is based on his trial counsel's failure to object to the admission of testimony regarding Appellant's requests for counsel. This claim also asserts error based on his counsel's failure to object to testimony that Appellant refused to provide additional statements to the investigating officers after he spoke with an attorney.
 {¶ 143} Appellant does not identify the specific portion of the record of which he now complains. Appellant merely claims that the testimony came from "many sources."
 {¶ 144} From this Court's review of the transcript, it is clear that Detective Fickes testified about his telephone conversation with Appellant's mother, including her alleged insistence that Appellant speak with an attorney before going to the police station. Fickes also testified that Appellant subsequently stated that he was going to get an attorney. (Trial Tr., Vol. 2, pp. 287-288.) Appellant's trial counsel did not object to this testimony.
 {¶ 145} While this testimony is likely inadmissible hearsay, hearsay is not the ground for Appellant's complaints on appeal. Regardless, Appellant personally testified on direct examination about his decision to contact an attorney and to thereafter decline to cooperate with the investigating officers. Appellant's trial counsel also elicited testimony establishing that Appellant called the investigating officers in response to their note left on his residence door.
 {¶ 146} It appears that Appellant's trial counsel was actually using this line of testimony to demonstrate that Appellant initially cooperated with the police and that he had nothing to hide, but then his mother intervened out of concern.
 {¶ 147} "Reviewing courts give great deference to defense counsel's performance and do not second-guess his or her trial tactics or related strategic decisions." State v. Hubbard,150 Ohio App.3d 623, 2002-Ohio-6904, 782 N.E.2d 674 at ¶ 37, citingState v. Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965.
 {¶ 148} As such, Appellant's trial counsel was not ineffective based on his failure to object since it appears to be part of his trial strategy. Thus, his first allegation of ineffective assistance of counsel lacks merit.
 {¶ 149} Appellant's second claim of ineffective assistance of counsel also asserts that his trial counsel failed to object to certain testimony. Specifically, Appellant points to Fickes' testimony in which he compared the victim's condition following the rape to that of other victims.
 {¶ 150} Appellant argues that the testimony improperly appealed to the jury's sympathies and that it was extremely prejudicial. Fickes testified on direct:
 {¶ 151} "Q How does she compare with other victims like that that you've dealt with?
 {¶ 152} "A Probably one of the most traumatized victims I've dealt with.
 {¶ 153} "Q How long have you been in law enforcement?
 {¶ 154} "A * * * this is the 21st year." (Trial Tr., Vol. 2, p. 283.)
 {¶ 155} Notwithstanding the nature of this testimony, Appellant's trial counsel thereafter re-elicited nearly the exact same testimony from Fickes on cross-examination. Appellant's trial counsel was clearly trying to get the detective to admit that Orr acted differently than all of the other victims he had seen in an attempt to undermine Orr's credibility. (Trial Tr., Vol. 2, pp. 293-294.) Then, on redirect, the prosecution clarified Fickes' testimony establishing that Orr's trauma was more perceptible than other victims he had seen. (Trial Tr., Vol. 2, pp. 295-296.)
 {¶ 156} In State v. Taylor (1996), 78 Ohio St.3d 15,676 N.E.2d 82, one of the issues on appeal concerned the prosecutor asking the jury, over objection, to show sympathy for the victim. Id. at 27-28. The Ohio Supreme Court held that these remarks did not constitute prejudicial error. Id. "Evidence or comments about crime victims, including the impact of a crime on victims, do not offend the United States or Ohio Constitutions, and did not harm appellant." Id. at 28 citing Payne v. Tennessee, 501 U.S. 808,111 S.Ct. 2597; State v. Hill (1996), 75 Ohio St.3d 195, 199,661 N.E.2d 1068. Crime victims cannot be separated from the offense. State v. Slagle (1992), 65 Ohio St.3d 597, 611-612,605 N.E.2d 916.
 {¶ 157} Appellant's trial counsel not only did not object to this line of questioning, but he readdressed the issue on cross-examination in an apparent attempt to somehow throw doubt on the credibility of Orr's behavior. Even though this may not have been the best defense strategy, Appellant's second claim of ineffective assistance of counsel lacks merit since Appellant's trial counsel was within his discretion and this second claim is also overruled.
 {¶ 158} Third and finally, Appellant claims that he was denied the effective assistance of counsel by his trial counsel's failure to secure the redaction of Defendant's Exhibit A, which purportedly contained the reference, "Its [sic] happened before and this guy obviously has a problem and we need to get him off the street." (Appellant's Brief, p. 24.) Defendant's Exhibit A is a handwritten statement allegedly prepared by Appellant's mother and subsequently signed by the state's witness Laura Thompson.
 {¶ 159} Appellant directs this Court's attention to page 350 of the trial transcript where Exhibit A was discussed on the record. The exchange between counsel and the trial judge followed the state's objection to the exhibit and resulted in a redacted version being admitted.
 {¶ 160} We note that Defendant's Exhibit A, attached to the trial transcript, does not contain the above-quoted language. In fact, Appellant provides no basis for his assertion that the original unredacted document was ever in the jury's possession. Our review of the record appears to indicate that it was not.
 {¶ 161} As such, this claimed error fails since there is no indication that anything but the redacted version was submitted to the jury pursuant to Appellant's trial counsel's request.
 {¶ 162} Therefore, each allegation of ineffective assistance of counsel lacks merit, and Appellant's assignment of error number eight is overruled in its entirety.
 {¶ 163} Appellant's tenth assignment of error asserts:
 {¶ 164} "The cumulative effect of errors was to deprive the defendant-appellant of his right to a fair trial under both the ohio and united states constitutions."
 {¶ 165} Appellant asserts that even if all of his assigned errors are deemed harmless individually, their cumulative effect deprived him of a fair trial. In support of this claim, Appellant points to the Ohio Supreme Court's decision in State v. DeMarco
(1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, for its holding that the cumulative effect of several hearsay rule violations was prejudicial.
 {¶ 166} In DeMarco, the defendant filed a fraudulent insurance claim alleging that his automobile had been stolen. The Supreme Court found that the trial court erred in allowing three separate instances of hearsay testimony. Each instance of hearsay testimony concerned another allegation of misconduct by the defendant, e.g., the defendant's alleged bank fraud and delinquent loan accounts.
 {¶ 167} In holding that the cumulative effect of the hearsay testimony was prejudicial, the DeMarco Court stated: "[s]ignificant parts of the testimony of these [three] witnesses involved technical violations of the hearsay rule, without a balancing demonstration of trustworthiness or reliability." Id. at 196.
 {¶ 168} In the instant cause, Appellant has asserted nine other assignments of error on appeal. Of those nine claimed errors, Appellant identified two trial court errors which may form the basis of this assignment. While assignment of error numbers three and four have some merit, these errors did not prejudice the outcome of the trial. These assignments of error have been individually addressed herein.
 {¶ 169} In reviewing these errors collectively and comparing them to the errors at issue in DeMarco, supra, the two cases are clearly distinguishable. The errors at issue in DeMarco not only concerned other bad acts by the defendant, but the Supreme Court noted that the hearsay testimony lacked a sufficient display of trustworthiness. Specifically, the hearsay testimony in DeMarco was based on statements, "from unidentified sources of unknown reliability; [and] speculation[.]" Id. at 195.
 {¶ 170} To the contrary, the hearsay contained in the field notes discussed under assignment of error number four cannot be said to be untrustworthy. Fickes' testimony almost completely matched his field notes, and Appellant's trial counsel never objected to this testimony, apparently as part of his trial tactic. (Trial Tr., Vol. 2, p. 287.)
 {¶ 171} Appellant's trial counsel had ample opportunity to cross-examine Fickes and to test the credibility of the statements within the notes. Appellant's wife was a witness in this matter, and could have been used either to substantiate or impeach that portion of the exhibit dealing with her comments to Fickes. While the field notes should not have been actually given to the jury, the statements contained therein were not, as inDeMarco, made by, "unidentified sources of unknown reliability[.]" Id.
 {¶ 172} The trial court's error in failing to admit the Cooper incident report combined with the admission of Fickes' field notes did not result in a cumulative effect of prejudice. The inconsistency in the Cooper report was identified and read to the jury, and the majority of the information in the field notes was already in evidence via Fickes' testimony. While the fact that error occurred may always be troubling, error alone will not support reversal. Appellant must show that prejudice of some kind arose from the error. Appellant here has failed, singularly and cumulatively. Thus, Appellant's tenth assignment of error lacks merit and is overruled.
 {¶ 173} Assignments of error two, five and nine stem from the trial court's May 29, 2002, Judgment Entry overruling Appellant's motion for a new trial and sentencing him to nine years in prison.
 {¶ 174} Appellant's second assignment of error asserts:
 {¶ 175} "The trial court erred in overruling defendant-appellant's motion for a new trial."
 {¶ 176} Prior to trial, the trial court sustained Appellant's Motion in Limine precluding the state from eliciting testimony or referencing the previous trial held December 14 and 15, 1999. Appellant now asserts that he was denied a fair trial as a result of an irregularity in the proceedings and prosecutorial misconduct based on the fact that the prior trial and appeal may have been evident to the jurors.
 {¶ 177} Crim.R. 33 provides:
 {¶ 178} "(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 179} "(1) Irregularity in the proceedings, * * * because of which the defendant was prevented from having a fair trial.
 {¶ 180} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 {¶ 181} "* * *
 {¶ 182} "(C) Affidavits required.
 {¶ 183} "* * *
 {¶ 184} "The causes enumerated in subsection (A)(2) and (3) must be sustained by affidavit showing their truth, and may be controverted by affidavit."
 {¶ 185} In his April 12, 2002, Motion for a New Trial, Appellant asserted:
 {¶ 186} "* * * according to an unnamed juror (available upon order by [the trial judge]), the jury was well aware of a prior trial due to the attachment of `Exhibit A' to the box containing all evidence bags, said box given to the jury prior to jurors deliberating.
 {¶ 187} "* * *
 {¶ 188} "It is clear that the jury being in possession of said `Exhibit A' clearly prejudices the Defendant. In fact, individual voir dire was requested and granted to specifically determine those prospective jurors who may have known about this [prior conviction.]" (April 12, 2002, Motion for New Trial.)
 {¶ 189} Appellant's claimed prejudice is wholly speculative. There is no evidence on the record which in any way supports Appellant's claims. It cannot be determined whether this incident occurred at all from the record, and Appellant provides nothing, including the name of the juror, with which to attempt to substantiate his allegation of wrongdoing. Additionally, Appellant failed to file or attach an affidavit in support of his Motion for a New Trial as required by Crim.R. 33(C). The trial court judge appropriately stated in his judgment entry:
 {¶ 190} "The Court finds that the Defendant did not file the required affidavit pursuant to Criminal Rule 33(C) and failed to show prejudice with regard to his claim of prosecutorial misconduct as required by Criminal Rule 33(E). For those reasons, and for others stated in the record, the Defendant's `Motion For A New Trial' is DENIED." (May 29, 2002, Judgment Entry, p. 1.)
 {¶ 191} The Sixth District Court of Appeals in Toledo v.Stuart (1983), 11 Ohio App.3d 292, 465 N.E.2d 474, has held:
 {¶ 192} "* * * If the defendant fails to produce supporting affidavits, the trial court, in its discretion, may deny the motion summarily without a hearing. * * *
 {¶ 193} "2. Neither the trial court's ruling on the new trial motion nor its decision on whether to hold a hearing thereon, will be disturbed on appeal in the absence of a clear showing that the court abused its discretion." (Citations omitted.) Id. at paragraphs one and two of syllabus.
 {¶ 194} An abuse of discretion involves more than an error of judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. The trial court's attitude must be unreasonable, arbitrary or unconscionable. Id.
 {¶ 195} Appellant failed to support his Motion for a New Trial with the requisite affidavit. Further, there is no basis on the record to conclude that either an error occurred or that Appellant was prejudiced as a result of this claimed error. As such, Appellant's second assignment of error lacks merit and is overruled.
 {¶ 196} Appellant's fifth assignment of error claims:
 {¶ 197} "The trial court erred in sentencing defendant-appellant to nine years in prison."
 {¶ 198} Appellant was convicted of rape in violation of R.C. § 2907.02(A)(2), a first-degree felony. He was subsequently sentenced by way of judgment entry filed May 29, 2002, to a definite term of nine years in prison. Appellant had two prior misdemeanor convictions and no prior felonies.
 {¶ 199} The trial court's May 29, 2002 Judgment Entry provided in part:
 {¶ 200} "The Defendant has been afforded all rights pursuant to Criminal Rule 32. The Court has considered the record, the oral statements of the Defendant, the victim impact statement, if any, and the pre-sentence investigation prepared in this case, as well as all the principles and purposes of sentencing provided for under O.R.C. § 2929.11, including the seriousness and recidivism factors found in O.R.C. § 2929.12.
 {¶ 201} "The Court finds that this Defendant is not amenable to community control sanctions; that he does not have a past history of criminal convictions but that this is a heinous act, which is offensive to the public; that recidivism is more likely; and that this Defendant needs to be punished and the public protected from future crimes by this offender." (May 29, 2002, Judgment Entry, pp. 1-2.)
 {¶ 202} Appellant urges on appeal that the trial court's sentencing was both inconsistent with general sentencing principles and contrary to law. Appellant cites a Ninth District Court of Appeals decision from 1935 for the proposition that a reviewing court has the power to relieve an excessive sentence if the sentence appears to be disproportionate, and if the record justifies that the sentence was probably a result of prejudice rather than sound discretion. Montalto v. State (1935),51 Ohio App. 6, 199 N.E. 198. Appellant, however, does not assert that his nine-year prison sentence was in any way a result of prejudice, and there is no indication that his sentence was the result of prejudice from a review of the record.
 {¶ 203} Appellant was sentenced pursuant to R.C. §2929.14(A)(1), which provides for prison terms from three to ten years for first degree felonies. R.C. § 2929.14(B) provides that the court shall impose the minimum term unless:
 {¶ 204} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 205} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 206} In the instant case, the trial court judge found on the record that Appellant was not serving a prison sentence at the time of the sentencing; that Appellant does not have an extensive criminal background; but, that nine years imprisonment was appropriate since anything less would be, "demeaning to the serious nature of this Defendant's conduct[,]" and that the public needed protection from the Appellant. (May 23, 2002, Tr. Motion for New Trial; Sentencing; and Sexual Predator Hearing, p. 30.) The judge concluded that this was a, "heinous act which is offensive to society," and that recidivism is likely.
 {¶ 207} Appellant disputes the court's finding that Appellant's offense warranted the nine-year prison term; one year less than the maximum.
 {¶ 208} R.C. § 2929.12(A) provides that a trial court sentencing a defendant for a felony has discretion to do so, but that it shall consider certain factors enumerated in R.C. §2929.12(B)-(E) relative to the seriousness of the defendant's conduct and the defendant's likelihood of recidivism. However, a sentencing judge can satisfy his or her duty under R.C. § 2929.12
with nothing more than a recitation that he or she considered the applicable factors. State v. Edmonson (1999),86 Ohio St.3d 324, 326, 715 N.E.2d 131. While a maximum sentence requires specific findings by the court, an imposition of more than the minimum term but less than the maximum does not require such specific findings. R.C. § 2929.19(B)(2)(d); Edmonson, supra.
 {¶ 209} The Ohio Supreme Court in Edmonson held that, "R.C.2929.14(B) does not require that the trial court give itsreasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." Id. The defendant in Edmonson, supra, argued that appellate review of sentencing was hindered since a sentencing court's findings do not have to articulate the reasons in support. Id. at 327. However, the Edmonson Court held that appellate review is not hampered since," R.C. 2953.08(F) explicitly obligates the appellate courts to review the record[.]" Id.
 {¶ 210} In reviewing the record as required by R.C. §2953.08(F), an appellate court cannot reduce, modify or vacate a sentence unless it finds that the trial court's decision is clearly and convincingly unsupported by the record or contrary to law. R.C. § 2953.08(G)(2).
 {¶ 211} An analysis undertaken pursuant to R.C. § 2929.12(B) requires an assessment of the facts of the particular offense at issue to, "conduct normally constituting the offense." In the instant case, the victim was not a minor; she was not related to Appellant; it did not involve significant violence or a firearm; the victim had not been drugged. Further, the rape as set forth in the trial transcript may not have been the worst form of the offense. It must be noted, however, that during the rape, Orr's two young children were in the next room.
 {¶ 212} Other factors that the sentencing judge must consider are set forth in R.C. §§ 2929.12(D) and (E), which relate to Appellant's recidivism. The only specific factor under subsection D applicable to recidivism was that Appellant showed no remorse for the offense. R.C. § 2929.12(D)(5). The statute also provides that the sentencing court shall consider any other relevant factors tending to indicate that Appellant will likely be a repeat offender.
 {¶ 213} The trial court relied on unspecified factors in ordering Appellant's nine-year prison term. Specifically, the court relied on the sentencing testimony of Beight. Beight, a criminal investigator for the Columbiana County prosecutor's office, testified that Appellant had one prior conviction for sexual imposition, and that that offense involved a ten-year-old victim. Beight further testified that she investigated at least six other allegations against Appellant ranging from sexual harassment to another rape that allegedly occurred when Appellant was 17 years old. (May 23, 2002, Tr. Motion for New Trial; Sentencing; and Sexual Predator Hearing, pp. 33-47.)
 {¶ 214} Based on Beight's testimony relative to Appellant's history and recidivism, specifically as to his prior conviction, Appellant's nine-year prison term was appropriate to protect the public from future crime by the offender. Therefore, this assigned error lacks merit, and Appellant's nine-year sentence is hereby affirmed.
 {¶ 215} Appellant's ninth assignment of error claims:
 {¶ 216} "The trial court erred in finding the defendant-appellant to be a sexual predator."
 {¶ 217} Appellant asserts that there was insufficient evidence to support the finding that he was a sexual predator.
 {¶ 218} The state must prove by clear and convincing evidence that the offender is a sexual predator. R.C. § 2950.09(B)(4).
 {¶ 219} "Clear and convincing evidence is the measure of proof which will produce in the mind of the trier of fact a firm belief as to the allegations sought to be established. * * * In reviewing the record to determine whether there was sufficient evidence to satisfy the requisite burden of proof, an appellate court shall not substitute its judgment for that of the trial court where there exists competent, credible evidence supporting the determination." (Citations omitted.) State v. Alicea, 7th Dist. No. 99 CA 36, 2002-Ohio-6907, at ¶ 38.
 {¶ 220} R.C. § 2950.01(E) defines sexual predator, and it essentially requires two findings. First, the offender must have been convicted or pleaded guilty to a sexually oriented offense. It is undisputed that Appellant was convicted of a sexually oriented offense. The second requirement is that the offender is likely to engage in one or more sexually oriented offenses in the future. R.C. § 2950.01(E).
 {¶ 221} R.C. § 2950.09(B)(3) lists factors that the judge must consider when determining whether an offender is a sexual predator. The factors include, but are not limited to, the offender's age, prior criminal record, mental ability, and the age of the victim. R.C. § 2950.09(B)(3). In addition to the listed factors, the statute also provides that the judge "shall consider all relevant factors * * *."
 {¶ 222} The Ohio Supreme Court in State v. Cook (1998),83 Ohio St.3d 404, 700 N.E.2d 570, 1998-Ohio-291, reinstated the underlying trial court's finding that the defendant was a sexual predator. It noted that the trial judge found that the defendant had two prior convictions involving sexual contact with children. Id. at 424. The trial court also noted that the defendant was involved in another prior act of sexual contact with a child out of state. Id. The out-of-state incident was apparently only identified in the presentence investigation report. Id.
 {¶ 223} Thereafter, Cook held, in pertinent part:
 {¶ 224} "* * * the Ohio Rules of Evidence do not strictly apply to sexual predator determination hearings. Thus, reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge." Id. at 425.
 {¶ 225} This Court in State v. Jones, 7th Dist. No. 02 BE 36, 2003-Ohio-1219, at ¶ 24, held that, "[v]arious appellate courts, including this one, have also held that evidence of uncharged sexual assaults is admissible at a sexual predator hearing."
 {¶ 226} In the instant matter, Appellant asserts that the trial judge improperly considered hearsay within hearsay testimony. Beight, the Columbiana County prosecutor's office criminal investigator, was the only state witness at Appellant's sexual predator hearing. She was involved in the investigation of the underlying conviction.
 {¶ 227} Beight testified that Appellant had a prior conviction for sexual imposition involving a ten-year-old girl in 1994. She also testified in detail regarding seven other individuals who had made complaints regarding Appellant's sexual improprieties, which ranged from lewdness to assault and rape. (May 23, 2002, Tr. Motion for New Trial; Sentencing; and Sexual Predator Hearing Tr., pp. 33-40.)
 {¶ 228} Beight's testimony regarding the incidents was permitted despite the objections of Appellant's counsel's. Beight was permitted to testify in detail regarding the facts and circumstances surrounding each allegation.
 {¶ 229} Upon cross-examination, Beight did not have all of the specific names and dates regarding each allegation. She testified that she had the information and statements, but that she just did not bring it all with her to testify at the hearing.
 {¶ 230} Based on the hearing transcript, it appears that Beight only personally interviewed one of the accusers. Beight's testimony regarding one incident was based on a statement provided to the East Liverpool police; another was based on a Children's Services investigation report; at least three incidents were based on incident reports and statements from Appellant's apartment complex. None of the statements or reports is part of the record. However, these documents, including the Children Services report, the East Liverpool police statement, and Appellant's apartment complex incident reports, are akin to documents that prior courts have found constitute reliable hearsay. Jones, 7th Dist. No. 02 BE 36, 2003-Ohio-1219, at ¶ 24. Notwithstanding, the introduction of live witnesses and exhibits is certainly the preferred method of introducing this type of information.
 {¶ 231} In rendering its decision finding Appellant a sexual offender, the trial court held:
 {¶ 232} "The Court finds by clear and convincing evidence that Corey McKinnon is a Sexual Predator. The finding is made on the basis of the conviction, which has been referenced by both counsel and was part of the original pre-sentence investigation.
 {¶ 233} "Also, the Court has considered the testimony of Bettina Beight. This is an administrative matter; the case law cited by the prosecution I believe is a correct case law. [sic] It allows the Court to suspend any Rules of Evidence and consider that — but to give the evidence that it does deserve in terms of where it came from and what type of evidence it is. It is true here in this case that we didn't have individuals come in and testify. However, the Court finds specifically in the record that Bettina Beight has a high degree of credibility with this Court and this Court's experience with her has only been positive in terms of providing accurate testimony in a number of different types of proceedings. So, therefore, the finding is made." (May 23, 2002, Tr. Motion for New Trial; Sentencing; and Sexual Predator Hearing Tr., pp. 51-52.)
 {¶ 234} A review of the requisite R.C. § 2950.09(B)(3)(a)-(j) factors concerning Appellant reveals the following: Appellant was approximately 22 or 23 years old at the time of the offense in 1997. His prior criminal record consisted of two misdemeanors. One conviction was for sexual imposition involving a ten-year-old girl. The victim of the instant offense was an adult. This offense did not involve multiple victims, the use of drugs or alcohol to impair the victim, or involve a pattern of abuse or any threats of cruelty. Appellant was a special education student in high school.
 {¶ 235} It is clear that the trial court relied on the "all relevant factors" aspect of R.C. § 2950.09(B)(3) since the trial court specifically cited the reliability of Beight and her credibility with the court. Beight's testimony provided significant detail concerning other incidents and allegations of sexual harassment and rape that she compiled while investigating the underlying rape conviction. Even if Beight had not testified, the record upon which she based her testimony was properly before the trial court and could be considered. The details and the number of the reported allegations are significant. Several of the allegations of misconduct likewise occurred at the Appellant's apartment complex in a similar manner to the underlying rape conviction. The allegations involved both strangers and social acquaintances. Appellant's trial counsel did not present any evidence in opposition.
 {¶ 236} In reviewing all relevant factors, both in favor of and contra to Appellant, sufficient and reliable evidence existed on the record to support the trial court's decision that Appellant is likely to engage in sexually oriented offenses in the future. As such, Appellant's ninth assignment of error is hereby overruled.
 {¶ 237} In conclusion, all of Appellant's assignments of error are overruled, and Appellant's conviction, sentence and sexual predator classification are wholly affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.